UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KELLY DZENCELOWCZ,

        Plaintiff,

v.                     Case No. 5:15-CV-0329 (GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

        Defendant.
_____

APPEARANCES:              OF COUNSEL:

STANLEY LAW OFFICES          JAYA A. SHURTLIFF, ESQ.
 Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.       MICHELLE L. CHRIST, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

    Currently before the Court, in this Social Security action filed by Kelly Dzencelowcz ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.     **RELEVANT BACKGROUND**

   A.     **Factual Background**

Plaintiff was born on November 18, 1977. Plaintiff obtained a General Education Development ("GED") certificate, and has past work as an assistant manager in a shoe store. Generally, Plaintiff's alleged disability consists of depression, degenerative disc disease, fibromyalgia, and myofascial pain syndrome. Plaintiff's alleged disability onset date is February 6, 2010.

   B.     **Procedural History**

On May 6, 2011, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On July 12, 2013, Plaintiff appeared in a video hearing before the ALJ, Andrew Henningfeld. (T. 39-68.) On September 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-25.) On March 11, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

   C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 14-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 6, 2010, the alleged onset date.[1] (T. 20.) Second, the ALJ found that Plaintiff's degenerative disc disease, fibromyalgia, and myofascial pain syndrome are severe impairments, but that Plaintiff's depression is not a severe impairment. (*Id.*) Third, the ALJ

---

[1] Although the ALJ stated that the alleged onset date was February 3, 2010 in this finding, earlier in the decision and at the hearing, the ALJ stated that the amended alleged onset date was February 6, 2010. (T. 16, 46-47.)

2

found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work[2] provided that the work does not require more than fifteen minutes of standing in any given hour and allows her to alternate between sitting and standing as needed. Work also must not involve climbing ladders, ropes, or scaffolds. She cannot stoop or crawl. Work must be unskilled, defined by regulation and ruling as work that needs little to no judgment to perform simple duties (20 C.F.R. §§ 404.1568(a), 416.968(a), Social Security Ruling 85-15). Further, work must not involve hazards such as dangerous moving mechanical parts or machinery that could cause bodily injury or work in high, exposed places.

(T. 18.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 20.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

      **D.**      **The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff advances three argument in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ did not apply the appropriate legal standards in (1) assessing the medical opinion evidence, (2) evaluating Plaintiff's fibromyalgia, and (3) determining the RFC. (Dkt. No. 12, at 1, 9-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not engage in the required evaluation of Plaintiff's subjective complaints, and therefore did not follow the relevant legal standards. (*Id.* at 12-13.) Third, Plaintiff argues that the Commissioner did not meet her burden at step five, and the vocational expert testimony cannot provide substantial evidence for a denial of disability benefits in this matter. (*Id.* at 13-15.)

---

[2]     Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.927(a); SSR 83-10, 1983 WL 31251 (1983).

Generally, Defendant advances two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's RFC finding. (Dkt. No. 15, at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found that Plaintiff could perform work in the national economy. (*Id.* at 11.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

5

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

For the ease of analysis, Plaintiff's arguments are reorganized below.

#### A. Whether the ALJ Erred in Assessing the Medical Opinion Evidence of Record in Determining the RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 6-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. §§

404.1545[a][3]-[4], 416.945[a][3]-[4]).  The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as nurse practitioners, to show how a claimant's impairments may affect his or her ability to work.  20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d).  Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case

record. 20 C.F.R. § 404.1527(c), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

In formulating a plaintiff's RFC, an ALJ is not required strictly to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Here, the ALJ found that Plaintiff has the RFC to perform sedentary work with additional limitations set forth above in Part I.C. of this Decision and Order. (T. 18-19.) For the reasons set forth below, the Court finds that the ALJ's RFC determination was supported by substantial evidence, including the opinions of (1) treating physician and pain specialist, Raymond Alcuri, M.D., and treating nurse practitioner, Mark Profetto, F.N.P., (2) treating orthopedist, Warren Wulff, M.D., and (3) independent examining orthopedic surgeon, Marc Bergeron, M.D. (T. 416-20, 428, 438, 456-57, 564.) Moreover, the ALJ's assessment of the opinion evidence, including the opinion of State agency consultative examiner, Kalyani Ganesh, M.D., was supported by substantial evidence. (T. 16-19.)

8

### i. Treating Physician and Pain Specialist, Raymond Alcuri, M.D., and Treating Nurse Practitioner, Mark Profetto, F.N.P.

On December 15, 2011, Dr. Alcuri diagnosed Plaintiff with low back pain, lumbar degenerative disc disease, muscle spasms, and myofascial pain syndrome. (T. 457.) Dr. Alcuri observed that Plaintiff had a limited range of motion of the lumbar spine, tenderness to palpation along the bilateral lumbar paraspinal muscles of the bilateral sacroiliac joints, and 16 of 18 positive fibromyalgia tender points. (T. 456.) Dr. Alcuri opined that Plaintiff had a limited ability to sit, stand, or walk for long periods of time, and had a limited ability to bend at the lumbar spine. (*Id.*) Dr. Alcuri opined that Plaintiff should be allowed to change positions (sit, stand, and walk) as needed, could not push, pull or lift more than ten pounds, and could not bend, stoop or crawl. (*Id.*)

On April 26, 2013, Mr. Profetto from Dr. Alcuri's office submitted a statement indicating that Plaintiff's limitations of function still existed and persisted to the same degree as outlined in Dr. Alcuri's opinion of December 15, 2011. (T. 564.) The ALJ afforded considerable weight to Dr. Alcuri's opinion and Mr. Profetto's statement confirming the same, reasoning that Dr. Alcuri has been Plaintiff's pain management specialist since 2010. (T. 18.)

### ii. Treating Orthopedist, Warren Wulff, M.D.

On February 4, 2010, five weeks after Plaintiff's injury, Dr. Wulff noted that Plaintiff had returned to work on light duty, but reported that she was challenged even working with restrictions. (T. 428.) Dr. Wulff gave Plaintiff an out-of-work slip due to her reported pain in the thoracic spine and right hip. (*Id.*) On May 18, 2010, Dr. Wulff opined that Plaintiff was capable of performing sedentary work. (T. 438.) However, Dr. Wulff noted that Plaintiff reported that she would need to remain out of work because her employer did not have sedentary work available for her. (*Id.*)

### iii. Independent Examining Orthopedic Surgeon, Marc Bergeron, M.D.

Dr. Bergeron examined Plaintiff twice and provided an assessment of her work-related limitations and abilities. (T. 416-20.) On April 11, 2011, Dr. Burgeron diagnosed Plaintiff with low back pain and dysfunction of the right sacroiliac joint with radiation to the right lower extremity proximally. (T. 420.) Dr. Burgeron indicated that Plaintiff had some evidence of radiculopathy by history and had a negative root tension sign. (*Id.*)

Dr. Burgeron opined that Plaintiff could perform "work that would be almost exclusively sedentary in nature" and would allow her to sit, stand, and walk as tolerated. (T. 425.) Dr. Burgeron further opined that Plaintiff could not stand or walk in combination for more than 20 minutes per hour, could not push, pull, lift or carry more than 15 pounds, and could not crawl, stoop, or work at heights or on ladders. (*Id.*)

### iv. State Agency Medical Examiner Kalyani Ganesh, M.D.

On September 11, 2012, Dr. Ganesh diagnosed Plaintiff with fibromyalgia and noted that she had a history of a bulging disc in the lower back and degenerative disc disease. (T. 492.) Upon examination, Dr. Ganesh observed that Plaintiff had 16 fibromyalgia tender points, and seven control points. (T. 491.) Dr. Ganesh opined that Plaintiff had "no gross limitation" in sitting, standing, or walking, and had a "mild to moderate limitation" in lifting, carrying, pushing, and pulling." (*Id.*) Dr. Ganesh opined that Plaintiff could sit, stand, and walk for eight hours at one time and for eight hours in an eight-hour workday. (T. 494.) Dr. Ganesh opined that Plaintiff could lift and carry up to ten pounds continuously, up to 20 pounds frequently, and up to fifty pounds occasionally in an eight-hour workday, and was limited to frequent pushing, pulling, balancing, and occasional stooping. (T. 493, 495-96.)

In sum, the ALJ noted that Dr. Alcuri, Dr. Wulff, and Dr. Bergeron opined that Plaintiff could perform at least a limited range of sedentary work, and Dr. Ganesh opined that Plaintiff could perform medium work. (T. 17.) The ALJ afforded little weight to Dr. Ganesh's opinion, reasoning that "it is apparent from his report and assessment that he largely disregarded complaints of pain and several external indicators of pain he found during the physical exam." (*Id.*) The ALJ afforded considerable weight to the opinions of Dr. Alcuri, Dr. Bergeron, and Dr. Wulff, reasoning that the opinions were "largely consistent with one another and reasonably consistent with the totality of the evidence." (*Id.*)

First, Plaintiff argues that the ALJ erred in relying on Dr. Alcuri's opinion because his opinion that Plaintiff could not stoop is inconsistent with sedentary work. (Dkt. No. 12, at 9-10 [Pl.'s Mem. of Law].) However, the ALJ's RFC determination explicitly stated that Plaintiff could not stoop. (T. 18.) Moreover, the vocational expert testified that there was other sedentary work that Plaintiff could perform that did not require stooping. (T. 19.) Therefore, Plaintiff's argument is without merit.

Second, Plaintiff argues that the ALJ erred in relying on the Workers' Compensation ratings provided by Dr. Alcuri and Dr. Wulff because (1) the Workers' Compensation disability percentages "pertain only to the limitations resulting from the work-related injury while Social Security takes all impairments into consideration," and (2) there is "no correlation between the legal standards relevant to New York State Workers' Compensation and the federal Social Security Disability program." (Dkt. No. 12, at 10-11 [Pl.'s Mem. of Law].)

However, the ALJ properly explained that "the impairment rating alone does not provide much insight into Claimant's exertional and non-exertional capacities, but the physical assessments from Drs. Alcuri and Wulff provide some context as to what the percentages might

11

mean for Social Security disability determination purposes." (T. 28.) Notably, in addition to providing Workers' Compensation ratings, Dr. Alcuri and Dr. Wulff provided more detailed physical assessments and opinions that Plaintiff could perform at least a limited range of sedentary work. (T. 438, 457.) The ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. *Domm*, 2013 WL 4647643, at *8. The ALJ must consider all of the relevant evidence, including medical opinions and a plaintiff's physical and mental abilities. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). Therefore, the ALJ did not err in considering the opinions of Dr. Alcuri and Dr. Wulff.

Third, Plaintiff argues that the ALJ erred in evaluating her fibromyalgia by considering the lack of objective medical evidence and intermittent nature of Plaintiff's symptoms. (Dkt. No. 12, at 11-12 [Pl.'s Mem. of Law].) The Court recognizes that objective clinical findings are not always required to find an applicant disabled by pain. *Campbell v. Colvin*, 13-CV-041, 2015 WL 73763, at *6 (N.D.N.Y. Jan. 6, 2015) (citing, *inter alia*, *Donato v. Sec. of Dep't of Health & Human Servs.,* 721 F.2d 414, 418-19 [2d. Cir.]) Moreover, reviewing courts have recognized that fibromyalgia can be a disabling impairment that no objective test can conclusively confirm. *Campbell,* 2015 WL at *6 (citing, *inter alia*, *Lisa v. Sec. of Dep't of Health & Human Servs.,* 940 F.2d 40, 44-45 (2d Cir. 1991); *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003). However, here, every medical opinion of record indicated that Plaintiff could perform at least a limited range of sedentary work. (T. 16-19.)

When a person alleges fibromyalgia, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment. SSR 12-2P, 2012 WL 3104869, at *5 (July

25, 2012). Here, the ALJ specifically stated that he viewed the medical records "as a whole." While the ALJ discussed the lack of objective medical evidence and intermittent nature of Plaintiff's symptoms, these were not the only factors that he considered in assessing the severity of Plaintiff's fibromyalgia and the resulting functional limitations. (T. 16-20.) Rather, the ALJ properly determined that Plaintiff's fibromyalgia was a severe impairment and included limitations in the RFC based on the *medical opinions* of record. (*Id.*)

Finally, the ALJ properly applied the regulations in assessing the medical opinions of record by citing the sources' professional credentials, treating or examining relationship with Plaintiff, and examination notes, and the consistency of the opinions with other medical evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 16-19.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ's assessment of the opinion evidence and RFC determination were supported by substantial evidence, and remand is not required on this basis.

B. **Whether the ALJ's Credibility Assessment was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 17-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271 (citing SSR 96-7p, 1996 WL 374186, at *2 [July 2, 1996].)

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271 (citing §§ 404.1529[c][3], 416.929[c][3]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's

symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ noted that Plaintiff alleged that her degenerative disc disease, fibromyalgia, and myofascial pain syndrome caused "a disabling level of pain." (T. 16.) Although the ALJ determined that Plaintiff's degenerative disc disease, fibromyalgia, and myofascial pain syndrome were severe medically determinable impairments, the ALJ cited evidence that was inconsistent with Plaintiff's allegations of disabling symptoms. (T. 20.)

Plaintiff argues that the ALJ did not make "an explicit finding" regarding Plaintiff's credibility, which Plaintiff argues "is problematic, particularly in a case involving fibromyalgia." (Dkt. No. 12, at 12-13 [Pl.'s Mem. of Law].) Regarding the Commissioner's evaluation of fibromyalgia, SSR 12-2P provides that "FM [fibromyalgia] which we determined to be an MDI [medically determinable impairment] satisfies the first step of our two-step process for evaluating symptoms" pursuant to SSR 96-7p. SSR 12-2P, 2012 WL 3104869, at *5. Accordingly, the ALJ satisfied the first step by determining that Plaintiff's fibromyalgia was a severe medically determinable impairment. (T. 20.) Moreover, as discussed below, the ALJ satisfied the second step by discussing the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms and determining that Plaintiff is not as limited as alleged. (T. 16-19.)

First, the ALJ considered the intensity of Plaintiff's alleged symptoms and the measures that she took to relieve her symptoms. (T. 16-17.) The ALJ noted that Plaintiff alleged that her degenerative disc disease, fibromyalgia, and myofascial pain syndrome cause a disabling level of pain. (T. 16.) The ALJ noted that Plaintiff has a history of pain management, and has tried chiropractic therapy, acupuncture, injections, and various pain medications. (*Id.*) However, the

15

ALJ noted that at least one physician found that Plaintiff's treatment was "excessive." (T. 16-17.)

Second, the ALJ considered evidence suggesting that Plaintiff exaggerated her symptoms. (T. 17.) For example, the ALJ noted that even on the days when Plaintiff rated her pain as being in the extreme range (*i.e.*, eight to ten on a ten-point scale), her treating sources noted that "she did not appear to be in acute distress." (*Id.*) The ALJ further noted that, on two separate occasions, Plaintiff tested positive on the Waddell's maneuver, a test used to detect overreaction to stimuli. (*Id.*)

Third, the ALJ considered inconsistencies in Plaintiff's reports regarding her symptoms and activities of daily living. (T. 17.) The ALJ noted that, at the hearing, Plaintiff testified that she spent most of her day in bed and could not do anything. (*Id.*) Yet, the ALJ noted that Plaintiff also reported that she was able to prepare simple meals, visit other people's homes, use a computer daily, drive, and manage her finances. (*Id.*)

Fourth, the ALJ considered medical opinion evidence that was inconsistent with Plaintiff's allegations of disabling symptoms. (T. 16-19.) The ALJ explained that, given the conflicting evidence of Plaintiff's disabling symptoms, he "relied in large measure on the medical opinions in assessing the extent of Claimant's limitations." (T. 17.) The ALJ noted that Dr. Alcuri, Dr. Wulff and Dr. Bergeron opined that Plaintiff could perform at least a limited range of sedentary work, and Dr. Ganesh opined that Plaintiff could perform medium work, as discussed above in Part III.A. of this Decision and Order. (*Id.*)

Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence. When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or

have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies he considered in discrediting Plaintiff's allegations of disabling impairments.

For these reasons, the ALJ's credibility analysis was supported by substantial evidence, and remand is not necessary on this basis.

### C. Whether the ALJ's Step Five Determination was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at

17

603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Here, the ALJ provided a hypothetical to the vocational expert that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether Plaintiff could perform other existing work in the national economy. (T. 19.) The vocational expert testified that, based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the surveillance system monitor, document preparer, and call-out operator positions. (*Id.*)

Plaintiff essentially argues that the ALJ erred in relying on vocational expert testimony that was in response to a hypothetical that did not accurately represent Plaintiff's limitations. (Dkt. No. 12, at 13-15 [Pl.'s Mem. of Law].) As discussed in Part III.A. of this Decision and Order, the ALJ's RFC determination was supported by substantial evidence, including the opinions of Dr. Alcuri, Dr. Bergeron, and Dr. Wulff. Because the Court finds no error in the ALJ's RFC assessment, we conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on the RFC. *Dumas*, 712 F.2d at 1553-54 (approving a hypothetical question to a vocational expert that was based on an assumption supported by substantial evidence in the record).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 29, 2016
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge